UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME HAILEY #575198,

Plaintiff,

Hon. Janet T. Neff

v.

Case No. 1:17-cv-1067

HEIDI WASHINGTON, et al.,

Defendants.
_________________________________/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 34). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **denied**.

**BACKGROUND**

On December 4, 2017, Plaintiff initiated this action against twelve (12) prison officials alleging numerous violations of his constitutional rights. On January 9, 2018, the Honorable Janet T. Neff dismissed Plaintiff's complaint for failure to state a claim on which relief may be granted. Plaintiff thereafter moved to amend his complaint to cure any deficiencies therein. However, because Plaintiff did not include with his motion a proposed amended complaint, the Court denied Plaintiff's motion. Plaintiff appealed the matter to the Sixth Circuit. Based upon Plaintiff's pleadings, the Sixth Circuit concluded that "it is appropriate to remand this case to the district court with instructions to allow Hailey to amend his retaliation claims." On

August 14, 2018, Plaintiff submitted a verified amended complaint[1] in which he alleges the following.

On an unspecified date, Plaintiff filed a grievance against the Food Service Director. On February 8, 2017, Plaintiff requested to be "removed from food service" because Corrections Officer William Crawford had questioned why Plaintiff filed a grievance. On February 24, 2017, Crawford stated to Plaintiff, "we will make sure you stop filing grievances against good people." On February 25, 2017, Crawford stated to Plaintiff, "I'm going to make your life a living hell."

On February 27, 2017, Plaintiff filed a grievance against Crawford and the Food Service Director alleging that they had been "negotiating with prisoner kitchen workers to have them physically assault" Plaintiff. The grievance coordinator, however, "refused to file the grievance and rejected it." Plaintiff then filed a "formal complaint" with the Michigan State Police. On March 20, 2017, Plaintiff was interviewed regarding his allegations. On March 22, 2017, Crawford stated to Plaintiff, "that complaint didn't help, did it?"

On March 29, 2017, Crawford reported that he witnessed Plaintiff "passing a knife to another prisoner." Plaintiff was thereafter subjected to a search during which another prison guard stated to Plaintiff, "Crawford is out to get you." On April 4, 2017, Plaintiff sent the Deputy Warden a "detailed account" of Crawford's various threats, but received no response. On April 13, 2017, Plaintiff again wrote the Deputy Warden urging him to investigate his allegations.

On April 18, 2017, Plaintiff sent a letter to the "Mental Health Residential Treatment Program Staff" detailing Crawford's many threats. Between April 18, 2017, and April

[1] The Court discusses below the determination that Plaintiff's Amended Complaint is properly verified.

20, 2017, Plaintiff wrote to the "Saginaw Mental Health Right Specialist Unit" detailing the issues he was having with Crawford. During this time frame, Plaintiff again wrote to the Deputy Warden alleging that he was being charged with misconduct violations as retaliation for filing grievances against Crawford.

On or about April 26, 2017, Crawford stated to Plaintiff, "stop filing grievances or else." On May 3, 2017, Crawford, in the presence of other prisoners and staff, "loudly stated" that Plaintiff is "a coward ass Muslim." On May 4, 2017, Crawford stated to Plaintiff, "I'm going to get you fucking coward." On May 5, 2017, Plaintiff wrote to the Michigan State Police and the Legislative Corrections Ombudsman to complain about Crawford's threatening behavior.

On May 25, 2017, Crawford approached Plaintiff while he was taking a shower and requested that Plaintiff perform oral sex on him. When Plaintiff refused, Crawford told Plaintiff, "I am writing you a ticket bitch." Plaintiff filed a grievance regarding this incident, but after receiving no indication that his grievance had been received and filed, Plaintiff contacted the sexual abuse hotline. On June 5, 2017, Crawford encountered Plaintiff and stated, "I am back sweet cheek." Later that day, Crawford stated to Plaintiff, "no more grievances, no more threats." On June 10, 2017, and again on June 12, 2017, Plaintiff wrote to the warden regarding Crawford's behavior, but received no response.

As of August 7, 2017, Plaintiff had been re-assigned to work in the kitchen. On this date, Plaintiff encountered Crawford who informed Plaintiff that he no longer worked in the kitchen. When Plaintiff asked "why is that?," Crawford indicated that because Plaintiff had filed "a report" implicating him that "pay backs a bitch." On August 12, 2017, Plaintiff filed a grievance against the classification director for reassigning him to work in food service. On

August 31, 2017, Plaintiff encountered Crawford who stated to Plaintiff, "I should say you threaten[ed] me and put you in the hole you piece of shit."

Between September 18, 2017, and September 26, 2017, Plaintiff "wrote a number of requests asking for the step two appeal forms for all of the grievances [he] had already filed against" Crawford and Corrections Officer Carl Smith. On October 13, 2017, Crawford and Smith charged Plaintiff with a misconduct violation for disobeying a direct order and failing to show up to receive his medications. Plaintiff was subjected to unspecified "retaliation and threats" until he was informed, on January 10, 2018, that he would be transferred to a different correctional facility.

Plaintiff alleges that Crawford and Smith violated his First Amendment right to be free from unlawful retaliation. Defendants Crawford and Smith now move for summary judgment on the ground that Plaintiff has failed to exhaust his administrative remedies.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact

could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I. Plaintiff's Amended Complaint is Properly Verified

For purposes of opposing a motion for summary judgment, allegations contained in a properly verified complaint "have the same force and effect as an affidavit." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). Federal Rule of Civil Procedure 56(c)(4) provides that an affidavit submitted in opposition to a motion for summary judgment must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Federal law provides that an unsworn declaration can have the same force as a sworn declaration if executed in "substantially" the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746. In his Amended Complaint, Plaintiff included the following statements:

> I, Jerome Mendell Hailey, understand that a f[a]lse statement or answer to any question in this declaration will subject as to penalties for perjury.

> I, Jerome Mendell Hailey, declare under the penalty of perjury that the events are true and correct.

(ECF No. 21 at PageID.97).

While perhaps not artfully stated, the Court finds that these two statements together satisfy § 1746. Plaintiff has subjected himself to perjury and asserts that his allegations are true and correct. Moreover, the assertions in Plaintiff's Amended Complaint are clearly made on personal knowledge. The Court finds, therefore, that Plaintiff's Amended Complaint is properly verified and any assertions therein may properly be considered as evidence in opposition to Defendants' motion for summary judgment.

## II. Defendants' Motion for Summary Judgment

Defendants Crawford and Smith argue that they are entitled to relief on the ground that Plaintiff has failed to properly exhaust his claims against them. Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants have provided copies of several grievances that Plaintiff pursued through all three steps of the grievance process. (ECF No. 35 at PageID.192-245). While none of these grievances exhaust any of Plaintiff's remaining claims, there exists a question of fact whether the MDOC grievance process was even available to Plaintiff.

In response to the present motion, Plaintiff has submitted three separate pleadings. (ECF No. 37, 40, and 41). Plaintiff also previously submitted a purported "supplement" to his amended complaint. (ECF No. 29). As Defendants correctly note, Plaintiff did not obtain leave to amend or supplement his complaint. The Court has nevertheless considered this supplemental pleading as part of Plaintiff's response to the present motion. Plaintiff's supplemental pleading does not assert additional claims against Defendants, but instead is a compilation of evidence Plaintiff believes supports his positions. Plaintiff has also directly referenced this pleading in his response to the present motion. (ECF No. 40 at PageID.278). Thus, even if the Court struck this pleading as an improper supplement to Plaintiff's complaint, it is still appropriate to consider such as part of Plaintiff's response to the present motion. Also, as discussed above, Plaintiff's amended complaint may be considered as evidence in opposition to the present motion.

While Plaintiff has failed to present evidence that he has pursued any of his remaining claims through all three steps of the grievance process, he has presented evidence creating a genuine factual dispute whether the grievance process was even available to him. In his Amended Complaint, Plaintiff alleges that Defendant Crawford made numerous threats in an attempt to persuade Plaintiff to stop writing grievances against Crawford or others. For example, Defendant Crawford once instructed Plaintiff, "stop filing grievances or else." (ECF No. 21 at PageID.94). Crawford later approached Plaintiff and stated, "I'm going to get you fucking

coward." (ECF No. 21 at PageID.94). After Plaintiff reported that Crawford had attempted to sexually assault him, Crawford stated to Plaintiff, "no more grievances, no more threats." (ECF No. 21 at PageID.95).

Plaintiff has submitted an affidavit in which he asserts that on three separate occasions he reported that Defendant Crawford was retaliating against him for writing grievances against Crawford and others. (ECF No. 29 at PageID.115). Plaintiff asserts that on each occasion he was explicitly threatened with sanctions if he continued to claim that Crawford was retaliating against him. On one occasion, a corrections officer stated to Plaintiff, "my staff don't do that type of shit, and if you dare mention any of that on any appeal I am going to give you a lot more. . .days on LOP [loss of privileges]." On another occasion, during a misconduct hearing, a hearing officer stated to Plaintiff, "well, now I got to find you guilty by claiming staff retaliating against you, but I'm going to be light on you." Finally, on yet another occasion, a hearing officer stated to Plaintiff, "d[ue] to the fact you claiming my staff is retaliating against you I find you guilty on every misconduct they may write on you." (ECF No. 29 at PageID.115).

As the Supreme Court recently clarified, a prisoner need only exhaust such administrative remedies as are available. *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones"). The Court further observed that "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," the remedy in question is unavailable for purposes of the PLRA. *Id.* at 1858-60.

The *Ross* Court did not define or otherwise describe the term "intimidation." Nevertheless, the Court has no trouble concluding that the harms Plaintiff alleges – threats of

physical violence, sexual propositions, and threats of sanction - satisfy any reasonable definition of "intimidation." Moreover, Plaintiff's claims of intimidation also concern specific occurrences and threats and are, therefore, distinct from a "mere allegation of a generalized fear of retaliation." *Briscoe v. D'Agata*, 2016 WL 3582121 at *8 (S.D.N.Y., June 27, 2016) (post-*Ross* decision noting that mere concerns of intimidation are insufficient to excuse failure to exhaust).

In sum, because there exists a genuine factual dispute whether the prison grievance process was actually available to Plaintiff, Defendants have failed to meet their burden to demonstrate a failure by Plaintiff to properly exhaust his available administrative remedies. Accordingly, the undersigned recommends that Defendants' motion be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 34), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: April 4, 2019

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge