UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME HAILEY #575198,

    Plaintiff,                                         Hon. Janet T. Neff

v.                                                       Case No. 1:17-cv-1067

WILLIAM CRAWFORD, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

The parties have filed cross-motions for summary judgment. (ECF Nos. 55 and 58.) Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' Motion for Summary Judgment be **GRANTED IN PART AND DENIED IN PART** and that Plaintiff's Motion for Summary Judgment be **DENIED**.

### I. Background

Plaintiff, a state prisoner incarcerated with the Michigan Department of Corrections (MDOC), filed a complaint pursuant to 42 U.S.C. § 1983 against a number of MDOC employees alleging violations of his rights under the First, Eighth, and Fourteenth Amendments based on events that occurred while Plaintiff was incarcerated at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Michigan. Plaintiff's complaint was dismissed on initial screening, (ECF Nos. 6 and 7), and his motion to alter or amend judgment/motion to amend his complaint was denied because Plaintiff failed to provide the Court a proposed amended complaint (ECF No. 11). Plaintiff filed a notice of appeal, raising only his retaliation claim against Defendants Corrections Officers Crawford and Smith before the Sixth Circuit. (ECF No. 17 at PageID.71.)

Concluding that some of Plaintiff's factual allegations in his appellate brief, if asserted in an amended pleading, could have provided substance for the causal connection found lacking on initial screening, the Sixth Circuit remanded the case to allow Plaintiff to amend his retaliation claims against Defendants Crawford and Smith.  (*Id.* at PageID.74–75.)  Plaintiff amended his complaint on remand, supplementing the factual basis for his claims.  (ECF No. 21.)  Plaintiff alleges that Defendants retaliated against him over the course of one year, until he was transferred to a different facility in January 2018.

### A. Allegations concerning Defendant Crawford

In February 2017, Plaintiff was employed in Food Service at MTU.  At some point prior to February 8, 2017, Plaintiff filed a grievance against Ms. Anthony, the Food Service Director at MTU.  (ECF No. 21 at PageID.92; ECF No. 56-2 at PageID.412.)  Shortly after Plaintiff filed the grievance, Defendant Crawford, who worked in Food Service, began to comment to Plaintiff about the grievance.  Defendant Crawford asked Plaintiff why he filed the grievance, to which Plaintiff responded that it was of no concern to Crawford.  Crawford said, "we'll see."  (ECF No. 21 at PageID.92.)  On February 8, 2017, Plaintiff signed a Form 363 requesting that he be removed from his Food Service job due to Defendant Crawford's harassment about the grievance.  Because Plaintiff's request was not immediately approved, he remained in his Food Service position for several weeks.  (ECF No. 56-2 at PageID.412–13.)

During the remainder of February 2017, Defendant Crawford issued Plaintiff a number of misconducts, primarily for being out of place based on failing to appear for his Food Service job, as follows:

- On February 11, 2017, Crawford issued Plaintiff a misconduct for being out of place when Plaintiff failed to show up after a callout to work in Food Service. Plaintiff stated that he had signed off his work detail and could no longer go to work due to anxiety issues.  Plaintiff was found guilty and sanctioned four days' loss of privileges.  (ECF No. 56-3 at PageID.427–28.)

2

- On February 16, 2017, Crawford issued Plaintiff two misconducts for being out of place when he failed to show up for his Food Service job for two different shifts in the same day. Plaintiff stated that Ms. Anthony mishandled his paperwork and should have removed him from his job. Plaintiff was found guilty on both charges and sanctioned five days' loss of privileges. (*Id.* at PageID.432–442.)

- On February 17, 2017, Crawford issued Plaintiff a misconduct for being out of place when he failed to show up for his Food Service job. Plaintiff pled guilty to the charge. Plaintiff was found guilty and sanctioned six days' loss of privileges. (*Id.* at PageID.444–48.)

- On February 24, 2017, Crawford issued Plaintiff two misconducts for being out of place when he failed to show up for his Food Service job for two different shifts. Plaintiff was found guilty and sanctioned three days loss of privileges. The hearing reports stated that Plaintiff was required to report to work until he was removed from his Food Service assignment. (*Id.* at PageID.450–59.)

- On February 25, 2017, Crawford issued Plaintiff two misconducts, one for being out of place when Plaintiff failed to show up for his Food Service job and the other for interference with administration of prison rules when Crawford found Plaintiff in the yard while on loss of privilege status. Plaintiff was found guilty of the charges and sanctioned with a total of eight days' loss of privileges. (*Id.* at PageID.464–75.)

On February 24, 2017, as Plaintiff was exiting the chow hall between 7:50 a.m. to 8:20 a.m., Defendant Crawford followed Plaintiff and stated, "We will make sure you stop filing grievances against good people." (ECF No. 21 at pageID.92.) On February 25, 2017, Defendant Crawford exited the chow hall and saw Plaintiff sitting in the A-Unit small yard. Defendant walked over to Plaintiff and stated, "I'm going to make your life a living hell." Defendant Crawford then asked for Plaintiff's identification card. (*Id.* at PageID.93.)

Plaintiff alleges that on February 27, 2017, he filed a grievance against Defendant Crawford and Ms. Anthony and, subsequently, filed a formal complaint with the Michigan State Police regarding their alleged negotiation with other prisoner kitchen workers to assault Plaintiff. (*Id.*) Plaintiff alleges that, from April to June, Defendant Crawford made harassing statements

3

and derogatory comments to Plaintiff that Plaintiff reported to various prison officials and outside agencies.  (*Id.* at PageID.94–96.)

In the summer of 2017, Plaintiff was placed back on a work assignment in the kitchen. Plaintiff alleges that on August 7, 2017, Defendant Crawford fired Plaintiff from his Food Service job because Plaintiff had filed a grievance against Defendant Crawford and Ms. Anthony.  (*Id.* at PageID.96.)  The same day, Defendant Smith pointed Plaintiff out to Defendant Crawford and stated, "that's the son of a bitch that wrote that [Prison Rape Elimination Act (PREA) complaint] on me."  Defendant Crawford responded, "oh, don't worry Hailey's been on my list to get.  I just fired his ass today and I'm not finish [sic] with him he got it coming."  (ECF No. 56-5 at PageID.490; ECF No. 58 at PageID.521.)

On August 9, 2017, Plaintiff filed a grievance against the Classification Director for placing him in great danger by returning him to a kitchen job.  (ECF No. 56-4 at PageID.487.) The Step I respondent stated that Plaintiff was removed from his Food Service job on August 7, 2017, "due to the safety, custody, and security of the facility," and a note and been placed in OMNI regarding future placement in Food Service.  (*Id.* at PageID.488.)  On August 31, 2017, Defendant Crawford threatened to place Plaintiff in segregation.  (ECF No. 21 at PageID.96.)

On October 13, 2017, Defendant Crawford issued Plaintiff a misconduct for disobeying a direct order.  Defendant Crawford had seen Plaintiff walk toward Healthcare and turn around and walk the other way, at which point Crawford told Plaintiff to come back to Healthcare.  Plaintiff refused the order.  Plaintiff was found not guilty because there was no indication in the misconduct report how Defendant Crawford identified Plaintiff.  (ECF No. 56-3 at PageID.478–79.)

### B.     Allegations concerning Defendant Smith

On May 25, 2017, while Plaintiff was in the shower, Defendant Smith walked into the shower area, grabbed his crotch, and stated to Plaintiff, "give me a shot of head." Plaintiff looked at Defendant Smith and said, "hell no." Defendant Smith then laughed and said, "I am writing you a ticket bitch." When Plaintiff asked why, Defendant Smith said, "because I can." (ECF No. 21 at PageID.95.) Defendant Smith apparently did not follow through on his threat to write a ticket. Plaintiff called the Sexual Abuse Hotline and filed a PREA complaint against Defendant Smith.

On October 13, 2017, Defendant Smith issued Plaintiff a misconduct for being out of place when Plaintiff failed to report to his mandatory callout to the medication line. Plaintiff was found not guilty because he was not out of place. (ECF No. 56-3 at PageID.481.) On October 31, 2017, Defendant Smith saw Plaintiff leaving the medication window and conducted a shakedown, during which Defendant Smith caressed Plaintiff's buttocks three times and stated, "Every time I see you I feel over excited. I like what I felt." (ECF No. 56-5 at PageID.491.) Thereafter, Plaintiff wrote another PREA grievance against Defendant Smith, which the grievance coordinator refused to process.

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

The requirements for a valid First Amendment retaliation claim are well established. In order to state a First Amendment retaliation claim, a plaintiff must establish that: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct.

*Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  If the plaintiff can show that his protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct, "the burden shifts to the defendant to show that the same action would have been taken even absent the protected conduct."  *Brown v. Crowley*, 312 F.3d 782, 787 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 399).

**A.  Defendants' Motion**

    **1.  Defendant Crawford**

        **a.  *Protected Conduct***

Defendants concede for purposes of their motion that Plaintiff engaged in protected conduct by filing grievances and complaints and speaking with various MDOC personnel.  However, they ague that Plaintiff cannot satisfy the second and third elements of his claim.

        **b.  *Adverse Action***

Defendants argue that Plaintiff cannot show that he suffered an adverse action because Crawford's alleged threats, harassment, and name-calling do not amount to adverse action.[1]  This assertion is correct.  As the Sixth Circuit has observed, "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations."  *Thaddeus-X*, 175

---

[1] Defendants argue that Plaintiff offers nothing more than his "self-serving" statements contained in his amended complaint and affidavit and fails to present corroborating evidence that Defendant Crawford threatened to place Plaintiff in segregation or made derogatory comments as Plaintiff alleges.  However, the Sixth Circuit has held that a plaintiff's "testimony alone is sufficient to create a jury question" on an issue.  *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010).  "A court may not disregard evidence merely because it serves the interests of the party introducing it."  *Id.*; *see also Niemi v. NHK Spring Co.*, 543 F.3d 294, 300 (6th Cir. 2008) ("[P]laintiff's] affidavit, albeit arguably self-serving, is not 'no evidence.'").  Thus, Plaintiff's affidavit and amended complaint and other documents verified in accordance with 28 U.S.C. § 1746 could alone suffice to create an issue of fact.

F.3d at 398; *see Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) ("harmless name-calling" does not satisfy the adverse action requirement).

Defendants do not address Plaintiff's other alleged adverse actions. In particular, Plaintiff alleges that Defendant Crawford issued Plaintiff misconduct tickets in retaliation for the grievance he wrote against Ms. Anthony in February 2017. Plaintiff lost privileges for each ticket. The Sixth Circuit has held that the issuance of a minor misconduct ticket, resulting in the deprivation of privileges, "poses a sufficient deterrent threat to be actionable." *Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018) (internal quotation marks omitted). The misconduct tickets Defendant Crawford issued to Plaintiff in February 2017 thus satisfy the adverse action requirement. The same is true of the October 2017 misconduct ticket that Defendant Crawford issued. *See Fletcher v. Bradford*, No. 1:18-cv-1160, 2018 WL 5961044, at *4 (W.D. Mich. Nov. 14, 2018) (a misconduct ticket on which the plaintiff was found not guilty was sufficiently adverse due to "the potential consequences of the misconducts, even if such consequences were never imposed"). Similarly, Defendant Crawford's alleged threat to send Plaintiff to segregation is sufficiently adverse to be actionable. *See Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (noting that even a threat of a transfer to more restrictive housing can constitute adverse action); *Thaddeus-X*, 175 F.3d at 398–99 (noting that a threat to transfer a prisoner to a more restrictive living environment with fewer privileges, such as a segregation unit, could be sufficiently adverse).

Other actions Plaintiff alleges do not amount to adverse actions. Plaintiff's allegation that yard officers searched Plaintiff at Defendant Crawford's request (ECF No. 21 at PageID.93), does not amount to adverse action. *See Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *6

8

(W.D. Mich. Dec. 19, 2018) ("A pat-down search is undoubtedly a 'routine inconvenience' of prison life. Indeed, many courts have concluded that subjecting a prisoner to a pat-down search is not sufficiently adverse to support a retaliation claim."). Plaintiff also alleges that Defendant Crawford "fired" Plaintiff from his kitchen job in August 2017. While being fired from a prison job can certainly constitute an adverse action according to caselaw within the Sixth Circuit, *see Moore v. Fales*, No. 1:18-cv-1237, 2019 WL 667886, at *3 (W.D. Mich. Feb. 19, 2019) (citing cases), no reasonable juror could conclude that Defendant Crawford's alleged firing was adverse to Plaintiff because Plaintiff admitted in the grievance he filed against the Classification Director that Plaintiff was upset about being returned to a Food Service position and demanded to be removed.[2]

### c. *Causal Connection*

Defendants argue that Plaintiff fails to present sufficient evidence to establish the requisite causal connection because he relies solely on temporal proximity. Temporal proximity is usually not sufficient by itself to establish a causal connection in a retaliation claim, but in some cases "may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (internal quotation marks omitted). Nonetheless, the Sixth Circuit has been reluctant to find that temporal proximity between protected conduct and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill*, 630 F.3d at 476.

---

[2] There is no indication that Defendant Crawford, a Corrections Officer, had any authority to "fire" or remove Plaintiff from his kitchen position. Instead, MDOC Policy Directive 05.01.100 indicates that the Classification Director has sole and final authority for determining whether a prisoner should be removed from a work assignment. Mich. Dep't of Corr. Policy Directive 05.01.100 ¶ O.

9

Here, Plaintiff relies on more than temporal proximity to establish a causal connection. Plaintiff has presented evidence that, near the time Defendant Crawford wrote the February 2017 misconducts, he harassed Plaintiff about his grievance against Ms. Anthony; stated "we'll see," when Plaintiff told Crawford the grievance against Ms. Anthony did not concern him; and told Plaintiff a couple of weeks later, "We will make sure you stop filing grievances against good people."  *See McCain v. Jenkins*, No. 2:15-cv-1262, 2020 WL 1904712, at \*7 (S.D. Ohio Apr. 17, 2020) (concluding that that temporal proximity, in addition to the defendant's statement that he was "tired of [Plaintiff] f\*cking writing [him] up and threatening to write [him] up!" sufficed to show a causal connection).  As for Defendant Crawford's alleged threat on August 31, 2017, to put Plaintiff in segregation, and the October 13, 2017 misconduct that Defendant Crawford issued, temporal proximity as evidence of causation is much weaker, as Plaintiff's grievance activity on which Defendant Crawford focused and the alleged retaliatory acts occurred many months apart. However, Crawford's alleged statements in August 2017 that Plaintiff had "been on [his] list to get" and he was not "finish[ed] with [Plaintiff]" and Plaintiff "got it coming" are sufficient to show a causal connection.[3]

"If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."  *Thaddeus-X*, 175 F.3d at 399. Defendant Crawford states in his affidavit that he wrote the February 2017 misconducts against Plaintiff for being out of place because Plaintiff failed to appear for his callouts and had no staff authorization to miss them.  (ECF No. 59 at PageID.526.)  He further states that he wrote the

---

[3] Plaintiff also alleged in his complaint that on August 7, 2017, before Plaintiff learned he was removed from his kitchen work assignment, he asked Defendant Crawford during a shakedown why he was still "messing" with Plaintiff, to which Defendant Crawford responded "because you filed a report on Ms. Anthony and I was included in it, pay backs [sic] a bitch."  (ECF No. 21 at PageID.96.)

10

February 25, 2017 non-work-related misconduct for being out of place because Plaintiff was on loss of privileges and was not permitted to be in the A unit yard.  (*Id.*)  Defendant Crawford states that he wrote the misconducts based on Plaintiff's violations of MDOC Policy and not in retaliation for Plaintiff's grievance activity.  (*Id.*)

Plaintiff does not deny that he failed to show up for his work assignments or that he was out of place by being present in the A unit yard when he was on loss of privileges.  He argues, however, that pursuant to MDOC Policy Directive 05.01.100 ¶ HH, Defendant Crawford was required to suspend Plaintiff from his kitchen assignment temporarily after he issued Plaintiff the initial misconduct for failing to show up to his work assignment.  Plaintiff argues that by keeping Plaintiff in his work assignment, Defendant Crawford was able to continue his campaign of harassment and ensure that Plaintiff was sanctioned with loss of privileges.  (ECF No. 61 at PageID.535–36.)  Plaintiff's argument lacks merit.  The provision Plaintiff cites states, "With prior approval of the Warden or designee, a prisoner who is charged with any misconduct *may* be temporarily suspended (i.e., "laid in") from their assignment pending the misconduct hearing." Mich. Dep't of Corr. Policy Directive 05.01.100 ¶ HH (italics added).  First, the provision does not mandate that a prisoner be suspended from his position.  Second, Plaintiff fails to show that Defendant Crawford was the warden's designee or had anything to do with the decision whether Plaintiff was or was not temporarily suspended pursuant to the policy.  Finally, Plaintiff could have avoided the misconducts and corresponding losses of privileges by showing up for his work assignments while waiting for approval of his request for termination of his job assignment. Accordingly, Plaintiff fails to create an issue of fact as to whether the February 2017 misconducts were retaliatory.

11

Defendant Crawford wrote the October 13, 2017 misconduct for disobeying a direct order. Defendant Crawford reported that after seeing Plaintiff leave the medication line, he ordered Plaintiff to come back to healthcare. Plaintiff refused and said, "You can see me back in the unit." (ECF No. 56-3 at PageID.478.) Plaintiff was found not guilty of the charge because Defendant Crawford failed to state in his misconduct report how he identified Plaintiff. (*Id.* at PageID.479.) In his affidavit, Defendant Crawford states that he issued the October 13, 2017 misconduct because Plaintiff failed to comply with a direct order to return to healthcare, in violation of MDOC policy, and not in retaliation for Plaintiff's grievance activities. (ECF No. 59 at PageID.527.) Plaintiff does not dispute that he made the statement and refused to comply with Defendant Crawford's order, and there is no reason to believe that the misconduct would not have resulted in a guilty finding had Defendant Crawford indicated in his misconduct report how he identified Plaintiff. Accordingly, Defendant Crawford has presented sufficient evidence to show that he would have written the misconduct in the absence of Plaintiff's protected activity.

As for the final adverse action, threatening to place Plaintiff in segregation, Defendant Crawford fails to specifically address this allegation and cites no persuasive basis for summary judgment on this aspect of the claim.

### 2. Defendant Smith

As noted above, Defendants concede that Plaintiff engaged in protected conduct by filing a PREA complaint against Defendant Smith. In addition, as set forth above, Plaintiff has shown that Defendant Smith engaged in adverse action by issuing the October 13, 2017 misconduct. The subsequent October 31, 2017 shakedown does not amount to an adverse action. *See Yates*, 2018 WL 6629366, at *6 ("A pat-down search is undoubtedly a 'routine inconvenience' of prison life.

Indeed, many courts have concluded that subjecting a prisoner to a pat-down search is not sufficiently adverse to support a retaliation claim.").

Plaintiff's claim fails on the third element because Plaintiff has not established a causal connection.  Plaintiff made his PREA complaint at the end of May 2017, but Defendant Smith did not issue the misconduct until more than four months later.  Temporal proximity alone thus cannot carry the day for Plaintiff.  The only other evidence Plaintiff offers is Defendant Smith's statement to Defendant Crawford in August 2017, while pointing Plaintiff out, that "that's the son of a bitch that wrote that PREA on me!"  (ECF No. 56-5 at PageID.490.)  While the statement indicates that Defendant Smith was not happy with Plaintiff, it does not suggest that Defendant Smith intended to engage in retaliatory conduct against Plaintiff.

While the allegations against Defendant Smith are certainly concerning, Plaintiff does not sufficiently connect the First Amendment protected conduct to the allegedly retaliatory ticket. Accordingly, the undersigned recommends that Defendant Smith be granted summary judgment on Plaintiff's claim.

### 3. Qualified Immunity

Defendants further argue that they are entitled to qualified immunity on Plaintiff's claims. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known.  *Harlow v.* Fitzgerald, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999).  An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  "Qualified immunity balances two important interests—the need to hold

13

public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236.

Because Plaintiff fails to establish his claim against Defendant Smith, Defendant Smith is entitled to qualified immunity. As discussed above, an issue of fact remains as to whether Defendant Crawford retaliated against Plaintiff by threatening to place him in segregation. Because the law is clearly established that a prison official may not retaliate against a prisoner for engaging in protected conduct, *see Maben*, 887 F.3d at 269, Defendant Crawford is not entitled to qualified immunity.

### 4.     **Eleventh Amendment Immunity**

Defendants argue that they are entitled to Eleventh Amendment Immunity on Plaintiff's official-capacity claims. A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). An official capacity suit is thus no different than a suit against the state itself. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity.") Because the Eleventh Amendment prohibits suits for damages against states in federal court, *see*

*Quern v. Jordan*, 440 U.S. 332, 342 (1979), damage claims against state officials in their official capacities are also barred by the Eleventh Amendment. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (noting that Eleventh Amendment immunity "applies to actions against state officials sued in their official capacity for money damages") (citing *Lapides v Bd. of Regents*, 535 U.S. 613, 616, 623 (2002)). Accordingly, to the extent Plaintiff sues Defendants in their official capacities, they are immune from suit and the official-capacity claims should be dismissed.

**B.     Plaintiff's Motion**

Plaintiff argues that he is entitled to summary judgment because he has demonstrated all the necessary elements of his retaliation claim. As set forth above regarding Plaintiff's claim against Defendant Smith, Plaintiff has failed to present sufficient evidence establishing a causal connection between Plaintiff's protected conduct and Defendant Smith's alleged retaliatory conduct. As for Plaintiff's claim against Defendant Crawford, Defendant Crawford has presented unrebutted evidence establishing that he would have issued the misconducts—the basis of Plaintiff's motion for summary judgment—even if Plaintiff had not engaged in protected activity. Moreover, a genuine issue of fact remains as to whether Defendant Crawford retaliated against Plaintiff by threatening to put him in segregation. Because the initial burden on summary judgment is on the moving party to conclusively show no genuine issues of material fact remain, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and Plaintiff has not met his initial burden, Plaintiff's motion for summary judgment should be denied.

## Conclusion

For the reasons set forth above, I recommend that the Court **grant in part and deny in part** Defendants' Motion for Summary Judgment (ECF No. 55), granting summary judgment on Plaintiff's claim against Defendant Smith and denying summary judgment on Plaintiff's claim against Defendant Crawford, but limiting the claim to Plaintiff's allegation that Defendant

Crawford threatened to place Plaintiff in segregation.  Plaintiff's official-capacity claims should be dismissed with prejudice.  I further recommend that Plaintiff's Motion for Summary Judgment (ECF No. 58) be **denied**.

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: July 20, 2020 /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge